**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Pamela Neumann, *et al.*, | No. CV-20-00387-PHX-JJT |
| Plaintiffs, | **ORDER** |
| v. | |
| Home Depot U.S.A. Incorporated, *et al.*, | |
| Defendants. | |

At issue is the admissibility of expert testimony provided by Dr. Morse on behalf of Plaintiffs Pamela, Julia, and Anna Neumann. The Court considers Defendant Home Depot U.S.A. Incorporated's ("Home Depot") Motion to Exclude John Morse (Doc. 36, Mot.), Plaintiff's Response (Doc. 41, Resp.), and Defendant's Reply (Doc. 47, Reply). The Court finds this matter appropriate for decision without oral argument. *See* LRCiv 7.2(f).

**I.   BACKGROUND**

   **A.   Brief Summary of Facts**

In November 2017, James Neumann ("Mr. Neumann") used a Krause ladder,[1] sold by Defendant, to climb his roof. (Resp. at 1-2.) Julia Neumann ("Julia"), Mr. Neumann's daughter, noticed the ladder bending inward while Mr. Neumann was on the roof, became concerned, and went underneath the ladder to hold it for more stability. (Mot. at 2-3.)

---

[1] A Krause ladder is composed of four sections, each three feet in length, connected by three pairs of lockable hinges. (Resp. at 1.) One set of hinges is found one-quarter of the way down the ladder, another set at the middle of the ladder, and a third set three-quarters of the way down the ladder. (Resp. at 1.) Each pair of hinges has two locking bolts, one on each side of the ladder. Each pair of hinges is unlocked by use of a release bar. (Resp. at 1-2.)

As Mr. Neumann descended the ladder, Julia believed that the ladder was not going to hold his weight, but he continued to climb down. (Mot. at 3; Mot. Ex. 1 at 4.) Slowly, the ladder began to bend further, and the middle hinges came inwards, towards where Julia was standing. (Mot. at 3; Mot. Ex. 1 at 5.) Eventually, Julia had to move out of the way of the ladder, at which point it collapsed. (Mot. Ex. 1 at 5.) Mr. Neumann fell backwards onto the driveway, struck his head on the concrete surface, and later died of his injuries. (Resp. at 2.)

**B.     Dr. Morse's Opinions**

Plaintiffs retained Dr. John Morse ("Dr. Morse") as an expert witness for this matter. (Resp. at 2; Resp. Ex. C at 2.) Due to the COVID-19 pandemic, Dr. Morse conducted a visual inspection of the ladder through FaceTime to obtain information and identify areas of concern. (Resp. at 3.) After travel reopened, Dr. Morse came to Arizona to conduct a thorough, multi-hour investigation of the subject ladder and the incident scene. (Resp at 3.) During the inspection, all the ladder joints were moved to their different positions and the ladder was placed into various configurations, including the straight ladder mode. (Resp. at 3.) The ladder was examined for damage and unusual conditions. (Resp. at 3.) Plaintiffs claim extensive measurements were made of the incident scene, and a partial accident reconstruction was created with the ladder being placed in the same approximate location as the day of the fall. (Resp. at 3.) Dr. Morse ascended and descended the ladder multiple times, noting the behavior of the ladder while Julia recounted her recollection of the incident. (Resp. at 3.)

Based on the facts recounted to him, Dr. Morse offers two possible scenarios that caused the fall and how each was caused by a design defect of the Krause ladder: (1) the kick the bar scenario and (2) false latch scenario. (Resp. at 3.)

In the "kick the bar" scenario, Dr. Morse proffers that Mr. Neumann accidentally kicked the middle release bar as he was descending the ladder, which caused the middle hinges to unlock. (Resp. at 4.) In this state, the middle hinges would not support the load on them as Mr. Neumann was climbing down the ladder. (Resp. Ex. A at 7.)

- 2 -

In the "false latch" scenario, the ladder was set up such that Mr. Neumann believed the ladder was fully locked, but the joint was not straightened out far enough for the locking bolt to fully engage. (Resp. at 4; Resp. Ex. A at 13.) Dr. Morse claims that his testing of Krause hinges shows that false latching can occur quite readily during ladder set-up, and that a Krause ladder can be set-up in the straight ladder position with the middle hinges in a false latched position. (Resp. Ex. A at 14.)

Dr. Morse claims that both scenarios were caused by the ladder's dangerous condition and lack of adequate warning. (Resp. at 4.) Defendant, however, alleges that Dr. Morse should be excluded pursuant to Fed. R. Evid. 702 and *Daubert* because his opinions are insufficiently reliable. (Mot. at 2; Reply at 2.)

**II.    LEGAL STANDARD**

Rule 702 of the Federal Rules of Evidence tasks the trial court with ensuring that any expert testimony provided is relevant and reliable. *Daubert v. Merrell Dow Pharm., Inc.* (*Daubert*), 509 U.S. 579, 589 (1999). "Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action." Fed. R. Evid. 401. The trial court must first assess whether the testimony is valid and whether the reasoning or methodology can properly be applied to the facts at issue. *Daubert*, 509 U.S. at 592–93. Factors to consider in this assessment include: whether the methodology can be tested; whether the methodology has been subjected to peer review; whether the methodology has a known or potential rate of error; and whether the methodology has been generally accepted within the relevant professional community. *Id.* at 593–94. "The inquiry envisioned by Rule 702" is "a flexible one." *Id.* at 594. "The focus . . . must be solely on principles and methodology, not on the conclusions that they generate." *Id.*

The *Daubert* analysis is applicable to testimony concerning scientific and non-scientific areas of specialized knowledge. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999). However, the *Daubert* factors may not apply to testimony that depends on knowledge and experience of the expert, rather than a particular methodology. *U.S. v.*

*Hankey*, 203 F.3d 1160, 1169 (9th Cir. 2000) (citation omitted) (finding that *Daubert* factors do not apply to police officer's testimony based on 21 years of experience working undercover with gangs). An expert qualified by experience may testify in the form of opinion if his or her experiential knowledge will help the trier of fact to understand evidence or determine a fact in issue, as long as the testimony is based on sufficient data, is the product of reliable principles, and the expert has reliably applied the principles to the facts of the case. *See* Fed. R. Evid. 702; *Daubert*, 509 U.S. at 579.

The advisory committee notes on the 2000 amendments to Rule 702 explain that Rule 702 (as amended in response to *Daubert*) "is not intended to provide an excuse for an automatic challenge to the testimony of every expert." *See Kumho Tire Co.*, 526 U.S. at 152. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596 (citation omitted).

## III. ANALYSIS

In their Motion to Exclude, Defendant offers four arguments in support of excluding Dr. Morse's testimony: (1) that Dr. Morse is an "expert for hire" because his opinions were developed solely for litigation (Mot. at 5-6); (2) Dr. Morse is an unreliable expert (Mot. at 5); (3) Dr. Morse provides fact characterizations (Mot. at 9); and (4) Dr. Morse provides legal conclusions. (Mot. at 14-16.)

### A. Relevant Expertise

"Persons with specialized knowledge may testify if their testimony will be helpful to the trier of fact in determining an issue of fact. A witness can qualify as an expert through practical experience in a particular field, not just through academic training." *Rogers v. Raymark Industries, Inc.*, 922 F.2d 1426, 1429 (9th Cir. 1991).

Defendant argues that Dr. Morse is an "expert for hire" because his opinions were developed solely for litigation, and not based on independent research. (Mot. at 5-6.) Defendant contends Dr. Morse has "no experience manufacturing or designing ladders." (Mot. at 6.) Instead, he has litigation experience in 62 categories of products, including

ladders. (Mot. at 6.) Therefore, he is subject to a more rigorous *Daubert* inquiry. (Mot. at 6.) Plaintiffs claim that Dr. Morse is qualified to opine on the design and safety of ladders based on his education, knowledge, and experience. (Resp. at 6.)

Dr. Morse is a Licensed Professional engineer in five states who holds a Bachelor's degree in mechanical engineering from John Brown University and a Ph.D. in mechanical engineering from Louisiana State University. (Resp. at 5.) Dr. Morse has investigated over 575 ladder and climbing accidents. (Resp. at 5.) Specifically, he has investigated over 30 Krause ladder failures, which is the type of ladder at issue. (Resp. at 6.) He has worked on the design and development of different parts of safety equipment attached to ladders, and has designed ladders, components of ladders, warnings for ladders, and authored publications on ladder safety. (Resp. at 6.)

Dr. Morse's experience is certainly relevant to the issues in this case. While a professional expert hired to testify on a wide range of topics with great frequency may indeed not pass muster as an expert in a specific field, *see Rascon v. Brookins*, No. CV-14-00749-PHX-JJT, 2018 WL 739696, at *3 (D. Ariz. Feb. 7, 2018), Dr. Morse's design experience and authored publications are relevant to the issues in this particular matter. Defendants argue that Dr. Morse's experience is outdated because he has only authored three scientific papers related to ladders, of which the most recent was authored 13 years ago, but they will have the opportunity to raise this issue during cross-examination. (Reply at 11.) Here, the age of Dr. Morse's research does not make it irrelevant.

The Court disagrees with Defendant's contention that Dr. Morse is an "expert for hire." Thus, Dr. Morse is not subject to a more rigorous *Daubert* inquiry.

### B.     Helpfulness and Reliability of Testimony

Defendant also contends that Dr. Morse's testimony should be excluded in its entirety because it is unreliable, and consists of fact characterizations, and/or legal conclusions. The Court will address each of Defendant's arguments in turn.

**1.     Reliability**

The Supreme Court has articulated four non-exclusive factors to consider in assessing an expert's reliability: (1) whether the scientific theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; and (3) whether a particular technique has a known potential rate of error; and (4) whether the theory or technique is generally accepted in the scientific community. *Daubert*, 509 U.S. at 593-94.

Most of Defendant's arguments that fall under the first and fourth *Daubert* factors challenge Dr. Morse's methodology and whether it is accepted in the scientific community. (*See generally* Mot.) Dr. Morse relies on the National Safety Council Accident Prevention Manual, claiming that it establishes a scientific method for hazard evaluation.[2] (Resp. at 4.) Dr. Morse also relies on the National Safety Council design hierarchy, which indicates what should be done after a hazard evaluation.[3] (Resp. at 4-5.) Dr. Morse claims that the National Safety Council's design hierarchy is very similar to the process described by the American Society of Mechanical Engineers.[4] (Resp. at 5.) To that end, he contends the

---

[2] The Accident Prevention Manual lists five steps (and an optional sixth step) that outlines a hazard evaluation/risk assessment: (1) establish the boundaries; (2) identify the hazards; (3) determine the failure modes that can lead to realization of a hazard; (4) evaluate the exposure of the hazard; (5) identify the consequences of realizing the hazard; and (6) find the probability of the hazard being realized. (Resp. Ex. A at 8-9.)

[3] Five hierarchical steps are taken to deal with any hazard that has been identified. (Resp. Ex. A at 9-10.) The first strategy is considered, and all practical applications must be exhausted before considering the second. (Resp. Ex. A at 9-10.) The second strategy is to be addressed before the third, and so on. (Resp. Ex. A at 9-10.) The five hierarchical steps, from most to least desirable are: (1) eliminate or reduce the risk; (2) incorporate guards/safety devices; (3) provide warning devices; (4) implement operating procedures and worker training; and (5) use personal protective equipment. (Resp. Ex. A at 9-10.)

[4] "There are six basic guidelines which a designer can apply in order to maximize the safety level of his products or manufacturing processes. The National Safety Council has published this list in descending order of effectiveness. One should rely upon the highest concept attainable, but if this is not possible, the very next one shown should be used. In brief these are: 1. Eliminate the hazard from the product or process by altering its design, material, usage or maintenance method. 2. Control the hazard by capturing, enclosing or guarding it at its source. 3. Train personnel to be aware of the hazard and to follow safe procedures to avoid it. 4. Provide adequate warnings and instructions in appropriate forms and locations. 5. Anticipate common areas and methods of abuse and take steps to eliminate or minimize the consequences associated with such actions. 6. Provide personal protective equipment to shield personnel against the hazard." (Resp. Ex. A at 10-11.)

- 6 -

"hierarchy is generally accepted in the field of engineering" as a standard model of analysis (Resp. at 5; Resp. Ex. C ¶ 28.) Defendant argues that Dr. Morse's claims are *ipse dixit* because he fails to direct the Court to any cases where these standards have been accepted in the ladder industry. (Reply at 6.)

Courts have cautioned against applying the reliability requirement too strictly, explaining that "the reliability requirement must not be used as a tool by which the court excludes all questionably reliable evidence." *Voilas v. Gen. Motors Co.*, 73 F. Supp. 2d 452, 460 (D.N.J. 1999) (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 742 (3d Cir. 1994)). Rather, "[i]n the final analysis, [t]he touchstone of Rule 702 ... is the helpfulness of the expert testimony, *i.e.*, whether it will assist the trier of fact to understand the evidence or to determine a fact in issue." *Id.* (citations and internal quotation marks omitted). The Court finds that Dr. Morse's reliance on the Accident Prevention Manual and design hierarchy provides at least some frame of reference for his judgment that either the kick the bar scenario or false latch scenario caused the fall.

Defendant also asserts that Dr. Morse did not verify his theories through testing. (Mot. at 9.) Rather, Dr. Morse relied on a subjective analysis and visual inspection of the ladder. (Mot. at 9-10.) The Court disagrees. Although Dr. Morse initially conducted a visual inspection of the ladder on FaceTime due to COVID-19 restrictions, he eventually carried out a detailed, multi-hour inspection of the subject ladder and fall site. (Resp. at 3.) His inspection included reconfiguring the ladder, testing the clamping force of the joints, a partial accident reconstruction, taking countless measurements, and climbing multiple times on the subject ladder.[5] (Resp. at 8.) While Dr. Morse's methodology could have been more clear,[6] Defendant may explore any perceived weaknesses through "[v]igorous cross-

---

[5] Defendant alleges that Dr. Morse should have performed ANSI A14.2 tests on an exemplar ladder. (Mot. at 10.) Plaintiffs, however, assert that Dr. Morse did not perform any ANSI A14.2 tests because they are inapplicable for kicking or otherwise striking a release bar, or that involve a ladder joint in a partially locked condition. (Resp. Ex. C at ¶ 36.)

[6] It would have benefited the Court and the parties if Dr. Morse had more clearly laid out the application of the methodology taken from the Accident Prevention Manual and design hierarchy.

- 7 -

examination, presentation of contrary evidence, and careful instruction on the burden of proof" to attack "shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

Next, the Court considers Defendant's arguments that fall under the second *Daubert* factor. Defendant asserts that Dr. Morse did not ground his theories on scholarly articles or publications. (Mot. at 9-10.) He did not provide any articles or papers showing that engineers in the ladder industry recognize the "kick the bar" scenario. (Mot. at 10.) Plaintiffs argue that Dr. Morse's theories do not need to be subjected to publication to be admissible because his opinions are validly grounded by his vast experience. (Resp. at 8-11.) The Court agrees with Plaintiffs.

Where an expert has applied his extensive experience, a lack of peer review, publication, and general acceptance in the field is not dispositive for the reliability analysis because the expert's opinion is the result of the expert's experience, not science. *Geiger v. Creative Impact Inc.*, No. CV-18-01443-PHX-JAT, 2020 WL 3268675, at *8 (D. Ariz. June 17, 2020). *See* Fed. R. Evid. 702 Committee Notes on Rules—2000 Amendment (when an expert's opinion is based on the "application of extensive experience," it is based on reliable principles and methods); *See also Aguilar v. Werner Enterprises, Inc.*, 2013 WL 12097447 at *5 (D. Ariz. 2013) (expert permitted to testify despite absence of peer review because he "formed his opinion based on his past experience, which is extensive, and his ability to relate that experience to the subject tire, which he examined.").

Dr. Morse has investigated over 575 ladder and climbing accidents, 30 of which were Krause ladder incidents involving hinge collapses.[7] (Resp. Ex. C ¶ 4.) In developing his opinion on the failure of the subject ladder, Dr. Morse admits to adopting the "kick the bar" scenario from a case he cites in his rebuttal report. (Resp. Ex. B at 11.) Defendant argues that Dr. Morse relied on hearsay because he did not personally investigate that case. (Mot. at 13-14.) Instead, he talked to the expert, watched their video demonstrating the

---

[7] It would have benefited the Court and the parties if Dr. Morse more clearly laid out some of these incidents, instead of providing a case name, court, and case number. (Mot. Ex. 2 at 28.) Dr. Morse asserting that he has "personal knowledge" of these incidents is somewhat vague (Resp. Ex. A at 27-28), but "[i]n many instances cross-examination will be sufficient to expose defects in an expert's presentation." *Harrington v. Richter*, 562 U.S. 86, 111 (2011).

- 8 -

"kick the bar" scenario, and read the deposition transcript. (Mot. at 14.) Moreover, the ladder in that case had xylan-coated lock bolts, which the subject ladder did not possess.[8] (Mot. at 11-12.)

The Court finds that Dr. Morse's reliance on the testing of other experts is well within the guidance of *Daubert* and Rule 702. Dr. Morse may base his testimony upon an analysis of testing performed by other engineers. *See Doyle v. Chrysler Group LLC*, SACV 13-00620 JVS, 2015 WL 353993, at *6 (C.D. Cal. Jan. 21, 2015); *See* Fed. R. Evid. 703 ("An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed."); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 ("Unlike an ordinary witness, see Rule 701, an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation. See Rules 702 and 703."); *Paeschke v. Gen. Motors LLC*, 4:16-CV-5050-LRS, 2017 WL 4003382, at *3 (E.D. Wash. Aug. 18, 2017) ("The facts and data upon which an expert may rely in reaching an expert opinion includes the opinions and findings of other experts, if experts in their respective field would reasonably rely on other expert's opinions and findings.").

Defendant further alleges that Dr. Morse's reliance on instances that have ladders in the stepladder configuration, instead of the straight ladder configuration, are irrelevant. (Mot. at 12-13.) Defendant points to Dr. Morse's rebuttal report, which states that "the configuration of the ladder may influence the clamping force on the locking bolt." (Mot. at 13; Mot. Ex. 3 at 17.) To that end, Defendant argues that any incidents that involve a purported "kick the bar" scenario in the stepladder configuration are not substantially similar, and Dr. Morse's reliance on these incidents is misplaced (Mot. at 13.) Although Dr. Morse admits that the length of the ladder may influence the magnitude of the forces

---

[8] Defendant's expert, Jon Ver Halen, asserts Dr. Morse based the "kick the bar" scenario on cases with ladders with xylan-coated zinc lock bolts. (Mot. Ex. 4 at 5; Mot. at 12.) These bolts have "less friction than the uncoated bolts on the subject ladder," and thus, the Krause ladder "would be even less prone to accidental unlocking." (Mot. Ex. 4 at 5.) Defendant argues that any reference to the "kick the bar" scenario should not be part of this case. (Mot. at 12.) The Court finds that this goes to the weight of the evidence, not its admissibility.

on the locking bolts, based on Dr. Morse's experience, he opines that the fundamental human factor design defects of the locking bolts are the same in both the straight ladder and stepladder configurations.[9] (Resp. Ex. B at 17.) The Court finds that Defendant's arguments go to the weight of the evidence, not its admissibility.

Turning to the third *Daubert* factor, Plaintiffs assert that a known or potential rate of error is inapplicable to this case. (Resp. at 11-12.) The Court agrees. A district court has the discretion to not examine factors that are "not reasonable measures of reliability in a particular case." *Kumho Tire Co.*, 526 U.S. 137 at 153. Because of "the nature of the issue, the expert's particular expertise, and the subject of his testimony," this factor is not pertinent in assessing reliability. *Id.* at 138. Here, Dr. Morse physically examined the subject ladder and relied on his experience and expertise to make determinations in this case. The error rate factor does not easily fit the analysis before the Court.

Accordingly, the Court finds that Dr. Morse's methodology is sufficiently reliable to meet the Rule 702 standard.

### 2. Fact Characterizations

Defendant next argues that Dr. Morse's opinion regarding the cause of Mr. Neumann's fall is inadmissible because he relied on fabricated facts. (Mot. at 9.) As the Court stated above, Rule 702 provides that an expert qualified by experience may testify in the form of opinion if his or her experiential knowledge will help the trier of fact to understand evidence or determine a fact in issue. *See Daubert*, 509 U.S. at 579.

The examples of Dr. Morse's fact characterization that Defendant provides are simply disagreements between Plaintiffs and Defendant about what the facts show. For example, in challenging Dr. Morse's opinion about the possibility of Mr. Neumann accidently kicking the release bar, Defendant states that the record shows "Julia did not testify that Neumann hit the release bar and instead testified that Neumann had not reached

---

[9] Dr. Morse explains that Krause locks have several human factor design defects. (Mot. Ex. 2 at 17.) Among these are the relatively low amount of lock travel between unlocked and fully locked positions, the existence of false latch positions, the side detent position of the locking bolt, the markings Krause uses on the hinge halves, and the lack of contrast between the locking bolt and surrounding hinge parts. (Mot. Ex. 2 at 17.)

- 10 -

that step." (Mot. at 9.) Defendant argues that Dr. Morse's testimony regarding the kicked release bar scenario was not sound or reliable. (Mot. at 8.) Because Mr. Neumann "was about halfway but not fully halfway" down the ladder, Mr. Neumann could not have kicked the middle release bar. (Mot. at 8-9.) This fact is clearly and genuinely disputed between the parties. Dr. Morse stated in his rebuttal report that the position of Mr. Neumann's feet on the ladder is unclear. (Resp. Ex. B at 10.) Julia did not state whether she was talking about the position of her father's feet on the ladder. (Resp. Ex. B at 10.) She did not differentiate which foot she was referring to, whether it was the lower or higher foot on the ladder. (Resp. Ex. B at 10.) She also does not define what she meant by halfway, as Mr. Neumann was not climbing the entire length of the ladder. (Resp. Ex. B at 10.) He was only climbing the nine rungs below the roofline. (Resp. Ex. B at 10.) Dr. Morse's rebuttal report explains that if Mr. Neumann had been halfway down the entire length of the ladder, he would have been below the rung immediately below the center hinges. (Resp. Ex. B at 10.) The release bar being kicked is still a viable scenario.

The Court will not exclude an opinion of Plaintiffs' expert simply because it does not align with Defendant's opinion. The issue here is whether the expert's opinion, based on sufficient data, is helpful to the jury in understanding the evidence. Defendant has not demonstrated that Dr. Morse's testimony is unhelpful in this regard, but instead argues that Dr. Morse relied on facts that were not found in the record. (Mot. at 7-9; Reply at 9-10). As the Court has already stated, Defendant will have the opportunity to raise any issues with Dr. Morse's interpretation of the relevant facts during cross-examination.

### 3. Legal Conclusions

Finally, Defendant contends that Dr. Morse offers inadmissible legal conclusions. (Mot. at 14-16.) Federal Rule of Evidence 704 allows an expert to express an opinion on an ultimate issue to be decided by the jury, but the Ninth Circuit has made clear that the propriety of an expert opinion on ultimate issues does not extend so far as to permit an expert to offer legal conclusions. *Muhktar v. Cal. State Univ., Hayward*, 299 F.3d 1053,

1065 n.10 (9th Cir. 2002) ("However, an expert witness cannot give an opinion as to her legal conclusion, *i.e.*, an opinion on an ultimate issue of law.").

To the extent that Defendant seeks to preclude Dr. Morse from testifying that it is reasonably foreseeable "Krause locks *will* malfunction during ladder use" and "a user *will* climb or stand on a ladder with a lock malfunction," Defendants' request is granted. (Mot. Ex. A at 11. (emphasis added).) These opinions are improper legal conclusions. While it may be appropriate for Dr. Morse to freely opine that in certain circumstances, Krause locks malfunction, or users climb or stand on a ladder with a malfunctioning lock, he must not volunteer an opinion that it is always reasonably foreseeable that such things occur.

Furthermore, to the extent that Dr. Morse implies legal conclusions, his testimony will not be permitted. Because Plaintiffs assert strict liability claims related to Krause ladders (Mot. Ex. 5 at 14-16), Dr. Morse should refrain from characterizing them as "unreasonably dangerous" and "defective."[10] (Mot. Ex. 2 at 29-30, 32, 33.) These are terms of art that will be ultimately determined by the jury. *See In re Juul Labs, Inc. Mktg., Sales Pracs. & Prod. Liab. Litig.*, No. 19-MD-02913-WHO, 2022 WL 1814440, at *14 (N.D. Cal. June 2, 2022). While Dr. Morse can offer his opinion as to facts that, if found, would support a conclusion that the legal standard for strict liability is satisfied, he may not testify as to whether the legal standard has been satisfied. *See Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1212–13 (D.C. Cir. 1997).

**IT IS THEREFORE ORDERED** granting in part and denying in part Defendant's Rule 702/*Daubert* Motion to Exclude John Morse. (Doc. 36).

Dated this 2nd day of August, 2022.

Honorable John J. Tuchi
United States District Judge

---

[10] The jury will decide whether Defendant sold Krause ladders "in a *defective* condition *unreasonably dangerous* to the user or consumer or to his property." *O.S. Stapley Co. v. Miller,* 103 Ariz. at 251, 447 P.2d at 551. (Mot. Ex. 5 at 14-15. (emphasis added).) If the jury finds Defendant did so, then Defendant is "subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property." *Id.* (Mot. Ex. 5 at 15.)